UNITED STATES of America,
Plaintiff–Appellee,

v.

Mary Jean FAUBION, Defendant–
Appellant.

No. 93–8508
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 22, 1994.

Mary Jean Faubion, pro se.

Richard L. Durbin, Jr., Asst. U.S. Atty. and James H. DeAltey, Act. U.S. Atty., San Antonio, TX, for the U.S.

Before WISDOM, KING, and GARWOOD, Circuit Judges.

WISDOM, Circuit Judge:

The defendant/appellant in this case, Mary Jean Faubion, assigns two points of error to the district court's denial of her section 2255 motion.[1] First, she contends that the court erred when it rejected her claim of ineffective assistance of counsel. Second, she complains of the court's ruling that a challenge to an upward departure under the sentencing guidelines is not cognizable in a § 2255 proceeding. Neither constitutes reversible error; we therefore affirm.

I.

Faubion was convicted of armed bank robbery. On February 27, 1989, she robbed the Savings of America Bank in San Antonio. In the course of taking the money, she admonished the teller with whom she was dealing not to press any alarm buttons. To emphasize her point, Faubion pulled out a black pistol, pointed it at the teller, and instructed, "Just give me all your money, now." The teller did as she was told. Faubion escaped with $1,418.00.

Faubion was arrested several months later in Ogden, Utah. She was apprehended in connection with an unrelated shoplifting investigation of her husband. When confronted by the authorities, she lied about her true identity and, further, disclaimed any knowledge of the bank robbery in San Antonio. After the authorities discovered who she was, they arrested her. Subsequently, she was indicted and convicted on one count of bank robbery in violation of 18 U.S.C. § 2113(d).

The pre-sentence report ("PSR") classified Faubion as a career offender under U.S.S.G. § 4B1.1, giving her a total offense level of 34. When that level was combined with her criminal history category of VI, it yielded a sentencing range of 262 to 327 months. Faubion objected to the career offender classification, however, on the basis that some of her past convictions did not fit the career offender criteria. A lengthy discussion ensued among the government, the defense, and the sentencing judge. Ultimately, but reluctantly, the sentencing judge ruled that a career offender classification in this case was inappropriate. Accordingly, he reduced her total offense level to 24 with a corresponding range of 77 to 96 months.

The district judge warned Faubion that he nonetheless was considering an upward departure in the light of the seriousness of the offense and the defendant's extensive criminal history. Again he entertained objections from Faubion's counsel and responses from the government. This time, the sentencing judge rejected the defense's plea that an upward departure was unnecessary and inappropriate. Consequently, he sentenced her to 120 months imprisonment, followed by five years supervised release and restitution to the bank of $1,418.00.

1. 28 U.S.C. § 2255.

On June 23, 1992, Faubion filed a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255 on the bases that, first, she received ineffective assistance of counsel and, second, the sentencing judge erred when he departed upward. The judge to whom this case was assigned recommended that Faubion's § 2255 motion be denied. The district judge adopted his recommendations and entered judgment.

On appeal, Faubion reiterates the same arguments for vacating her sentence as she pressed in the district court. The focal point of her motion is that her attorney provided ineffective assistance when he advised her to go to trial in the light of the overwhelming evidence against her. She complains that it was ineffective assistance not to counsel her to plead guilty because, she argues, she would have received a two-level reduction at sentencing for "acceptance of responsibility".

Overshadowed by that unusual charge are two other allegations that she received ineffective assistance of counsel. First, she contends that her attorney failed to investigate her competency to stand trial. Second, she complains that her attorney failed to appeal errors in the sentencing.

## II.

■ In challenges to district court decisions under 28 U.S.C. § 2255, we measure findings of fact against the clearly erroneous standard and questions of law *de novo*.[2] The district court's conclusions regarding Faubion's claims that she received ineffective assistance of counsel are mixed questions of law and fact and, thus, also subject to *de novo* review.[3] Subject to those standards, we turn to Faubion's assigned points of error.

**2.** *United States v. Woods,* 870 F.2d 285, 287 (5th Cir.1989).

**3.** *Beets v. Collins,* 986 F.2d 1478, 1489 (5th Cir. 1993), *reh'g granted,* 998 F.2d 253 (5th Cir.1993).

**4.** 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**5.** *United States v. Smith,* 915 F.2d 959, 963 (5th Cir.1990) (citing *Strickland,* 466 U.S. at 678, 104 S.Ct. at 2059, 80 L.Ed.2d at 687).

### A. Ineffective Assistance of Counsel.

■ A claim that counsel's performance fell below the threshold for effective assistance is analyzed under the framework that the Supreme Court established in *Strickland v. Washington*[4]. To carry her burden, Faubion must show that (1) her attorney's performance was deficient and (2) this deficient performance prejudiced her defense.[5] To satisfy the first prong, the petitioner must show that the alleged errors of her counsel were so serious as to render the assistance she received below the constitutional minimum guaranteed by the Sixth Amendment.[6] That constitutional minimum is measured against an objective standard of reasonableness.[7]

■ As to the second prong, the petitioner must demonstrate that her counsel's deficient performance so prejudiced her defense that the proceeding was fundamentally unfair.[8] This test is the linchpin and requires a showing that, but for counsel's errors, the result would have been different.[9] It is within this framework that we examine Faubion's allegations of deficient, prejudicial performance by her counsel.

■ *1. Advice to Go to Trial.* Faubion contends that her counsel's performance was deficient because he recommended going to trial instead of pleading guilty. She charges that, "[g]iven the overwhelming evidence against me, no reasonable person would have taken the case to trial." This argument is unusual, to say the least. Usually a prisoner challenges an attorney's advice to plead guilty. With excellent hindsight, prisoners often contend that, had they gone to trial, they would have presented a stellar defense

**6.** *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2063, 80 L.Ed.2d at 692–93.

**7.** *Id.* at 688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.

**8.** *Id.*

**9.** *See United States v. Kinsey,* 917 F.2d 181, 183 (5th Cir.1990).

and, ultimately, received an acquittal.[10] The originality of Faubion's claim outpaces its merit, however. Her claim fails the second prong of the *Strickland* test: She has failed to demonstrate how she was harmed by going to trial instead of pleading guilty.[11]

It is important to focus Faubion's argument. She does not challenge the district court's refusal to grant her a two-point reduction for acceptance of responsibility. Rather, she argues that his failure to recommend a plea of guilty in an effort to secure this reduction constitutes ineffective assistance of counsel.

Courts are deferential to attorneys in examining the exercise of reasonable professional judgment.[12] Our focus is not what the sentencing judge might have done, had she pleaded guilty. We determine only whether the attorney's performance was objectively reasonable as required by the Sixth Amendment and whether the petitioner has proved prejudice.

Faubion's logic is flawed for several reasons. Counsel's decision to force the government to prove the charges brought against his client, particularly when the alternative offered no discernible advantage, was well within the bounds of adequate assistance. Faubion's counsel sat at the plea bargain table alone; the government offered no deal. Hence, in her attorney's considered judgment she had nothing to lose—and possibly something to gain—by proceeding to trial.

Faubion argues that the potential reduction for acceptance of responsibility was impetus enough to plead guilty.[13] The dispositive flaw here is that she can demonstrate no probability that she would have received that adjustment. Faubion reads a cause-and-effect relationship between pleading guilty and receiving the two-point reduction for acceptance of responsibility. The guidelines, however, expressly reject that position. The commentary to section 3E1.1 specifically states that while "[e]ntry of a plea of guilty prior to the commencement of trial ... will constitute significant evidence of acceptance of responsibility" a "defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right."[14]

Significantly, her counsel's advice to proceed to trial did not vitiate her entitlement to the acceptance of responsibility adjustment. The guidelines expressly state that one who is convicted after a trial may still be entitled to the reduction.[15] What plainly foreclosed her entitlement to the reduction were her pre-trial statements and conduct reflecting no remorse or acceptance of responsibility for her crime.

In fact, at every stage, Faubion's pre-trial and pre-arrest conduct demonstrated the opposite of acceptance of responsibility. Faubion was a fugitive for several months while law enforcement agencies worked to apprehend her. She fled San Antonio and travelled all the way to Ogden, Utah, before she

10. *See, e.g., Hill v. Lockhart,* 474 U.S. 52, 57–58, 106 S.Ct. 366, 369–370, 88 L.Ed.2d 203, 209–10 (1985).

11. Failure to demonstrate prejudice pretermits our inquiry regarding the alleged deficiency of counsel's performance. *See United States v. Pierce,* 959 F.2d 1297, 1302 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 621, 121 L.Ed.2d 554 (1992).

12. *See Burger v. Kemp,* 483 U.S. 776, 789, 107 S.Ct. 3114, 3123, 97 L.Ed.2d 638, 654 (1987); *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2065, 80 L.Ed.2d at 695.

13. Section 3E1.1 of the sentencing guidelines provides:

*Acceptance of Responsibility*
(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:
(1) timely providing complete information to the government concerning his own involvement in the offense; or
(2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government to allocate its resources efficiently,
decrease the offense level by 1 additional level.

14. U.S.S.G. § 3E1.1, commentary n. 3 (1993). *Accord, United States v. Mourning,* 914 F.2d 699, 705 (5th Cir.1990).

15. U.S.S.G. § 3E1.1, commentary n. 2.

could be caught. When confronted by the security personnel at the store where her husband was detained for shoplifting, she denied her true identity. Upon arrest, she denied knowledge of the bank robbery. This conduct is diametrically inconsistent with any acceptance of responsibility.[16]

This was not lost on the sentencing judge. Far from leading to a reduction for acceptance of responsibility, Faubion's pre-trial and pre-arrest conduct persuaded the judge to give her a sentence *enhancement* for obstruction of justice under U.S.S.G. § 3C1.1. The commentary to section 3E1.1 states that, when a convict is penalized for obstructing justice, it "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct."[17] Consequently, only in "extraordinary cases" will a prisoner receive both the obstruction penalty and maintain his entitlement to the acceptance of responsibility benefit.[18] In the light of her penalty for obstruction, then, Faubion's complaint regarding her attorney's failure to recommend pleading guilty is an empty charge.

In sum, no reasonable probability exists— even if she had pleaded guilty—that she would have benefitted from the acceptance of responsibility reduction. "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[19] Without a showing of reasonable possibility, Faubion has failed to establish the requisite prejudice to sustain an ineffective assistance of counsel claim.[20]

We underscore our hesitancy to impose the badge of deficiency on an attorney's measured judgment to go to trial instead of pleading guilty. To hold otherwise would put attorneys on notice that their zealous pursuit of an acquittal when the government offers no concessions might result in a successful claim that he or she performed deficiently. The facts of this case compel no such warning.

█ *2. Failure to Investigate Faubion's Competency.* Faubion contends that her attorney's performance was deficient because he did not thoroughly investigate her competency to stand trial. Again, under the *Strickland* framework, she must show that, in this respect, his performance was deficient and, more, that her defense was prejudiced by that inadequacy.

"A criminal defendant may not be tried unless he is competent."[21] The standard for whether a criminal defendant is competent to stand trial is

> whether the defendant has sufficient present ability to consult with [her] lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against [her].[22]

Faubion has not demonstrated any basis upon which we could conclude that it constituted ineffective assistance of counsel for her attorney not to have investigated her compe-

**16.** The downward adjustment for acceptance of responsibility is made on the sole basis of *pretrial* conduct. *Id.*

**17.** U.S.S.G. § 3E1.1, commentary, n. 4.

**18.** *Id. Accord, United States v. Paden*, 908 F.2d 1229, 1236–37 (5th Cir.1990), *cert. denied*, 498 U.S. 1039, 111 S.Ct. 710, 112 L.Ed.2d 699 (1991). The sentencing judge concluded that Faubion's criminal history rose to a level just shy of career offender. Had she received career offender status, the credit for accepting responsibility would no longer have been available to her.

**19.** *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

**20.** Faubion's claim is quite different from the allegations the defendant raised in *United States v. Day*, 969 F.2d 39 (3d Cir.1992), the case upon which Faubion relies. In that case, the court

held that the defendant had received ineffective assistance of counsel when he was told that his maximum sentence exposure under the guidelines was eleven years. *Id.* at 42–44. That erroneous advice led him to decline the government's plea offer of five years. He took his chances, went to trial, and received a sentence of over 22 years in the light of his career offender status, and could have received more. *Id.* at 41. Given the circumstances of that case, a reasonable probability existed that, had he been informed of his real sentence exposure, the five-year offer would have been more attractive. Reasonable probability is the key; there it existed, here it does not.

**21.** *Godinez v. Moran*, —— U.S. ——, ——, 113 S.Ct. 2680, 2685, 125 L.Ed.2d 321, 330 (1993) (internal quotations omitted).

**22.** *Id.*

tency. In the PSR, Faubion reported that she had never received treatment for mental or emotional problems. Faubion displayed no signs of mental or emotional distress. At all times, she maintained good communicative skills. No indication exists that she was ever incapable of consulting effectively with her attorney. She understood fully the nature of the charges and proceedings against her.

Faubion's charge is premised on the notion that she was not in the "right frame of mind" at the time of trial. In particular she was distracted by the concern for her children's well-being and her difficult pregnancy. There are doubtless many defendants who find elusive the "right frame of mind" for a criminal proceeding in which they are being tried. A showing of incompetency, however, requires more. The most that Faubion can highlight is a psychiatric evaluation that she underwent in connection with a prior conviction and a hospital stay following her attempted suicide in 1984. The testing, however, was done expressly for the purpose of determining whether she was under the effects of a drug overdose when she committed that robbery. The suicide attempt occurred five years before the offense in this case; its relevance is too temporarily attenuated to be meaningful. In sum, her averments fail to demonstrate how her attorney's alleged failure to further investigate her competency rises to the level of deficient performance.

■ *3. Advice to Forego a Direct Appeal.* Faubion charges that her counsel's assistance was ineffective because he advised her not to take a direct appeal from her conviction and sentence.[23] An attorney's advice not appeal is subject to the same tests as other claims of ineffective assistance of counsel.[24] Faubion must show deficient performance and prejudice. She has demonstrated neither.

The attorney's role in this context is to provide information on how to appeal and the opportunity to do so; the client's role is to make the final decision as to take or not to take the appeal. The Constitution requires that "the client be advised not only of his right to appeal, but also of the procedure and time limits involved and of his right to appointed counsel on appeal."[25] Still, the ultimate decision was Faubion's; the attorney has no right or duty to take an appeal until the client expresses to counsel her desire to do so.[26] Nothing in the record indicates that Faubion was not at all times aware of her right to appeal. That her attorney perceived no adequate grounds upon which to press an appeal does not translate into ineffective assistance of counsel.

Faubion points to her attorney's failure to appeal the sentencing judge's upward departure as evidence of his deficient performance. The judge, she asserts, made that departure without giving the parties adequate notice. The law, however, clearly indicates that no legitimate basis on which to appeal existed. The law at that time was that no reversible error exists where a defendant has the opportunity to comment on a court's *sua sponte* departure, even if the court gave no prior notice.[27]

It is true that the United States Supreme Court subsequently rejected our approach to this question. In *Burns v. United States*[28], the Court held that

> before a district court can depart upward on a ground not identified as a ground for upward departure either in the presen-

---

**23.** Faubion also alleges different shades of this claim. For instance, she presses her attorney's alleged failure to discuss the possibility of taking an appeal with her and, similarly, that she was denied a direct appeal through her attorney's deficient performance. She did not present these other angles to the district court though, obviating our need to address them here. *See United States v. Colon–Padilla,* 770 F.2d 1328, 1334 n. 6 (5th Cir.1985).

**24.** *See Qualls v. United States,* 774 F.2d 850, 851–52 (7th Cir.1985).

**25.** *Id.*

**26.** *Childs v. Collins,* 995 F.2d 67, 69 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 613, 126 L.Ed.2d 577 (1993).

**27.** *See United States v. George,* 911 F.2d 1028, 1029–30 (5th Cir.1990); *United States v. Avila–Iscoa,* 888 F.2d 1049, 1050 (5th Cir.1989), *cert. denied,* 496 U.S. 908, 110 S.Ct. 2593, 110 L.Ed.2d 273 (1990).

**28.** 501 U.S. 129, ——, 111 S.Ct. 2182, 2186–87, 115 L.Ed.2d 123, 133 (1991).

tence report or in a prehearing submission by the government, Rule 32 requires that the district court give the parties reasonable notice that it is contemplating such a ruling.

Nonetheless, even if her sentence had been reversed on the ground identified in *Burns*, Faubion has not shown that the result of a proper resentencing would have been any different. Hence, she again has failed to prove that she was prejudiced.

In addition, both Faubion and her attorney had ample opportunity to comment on the departure. Her attorney presented several arguments which, although ultimately rejected by the court, represented well Faubion's position on the question.[29] Faubion similarly was presented with an opportunity to challenge the departure.[30] Her counsel cannot be faulted for foregoing an appeal on this basis.

*4. Final Word.* In sum, we hold that counsel's assistance in this case was not ineffective.[31] We recognize the tendency, when all else fails, to blame the lawyer. With that in mind, it bears repeating: "Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." [32] As we have indicated in the past, the acuity of hindsight is not our proper lens. We will not subject attorneys to unrealistic standards. On the whole, defense attorneys serve their clients's interests well. In the case at hand, the advice to go to trial and the recommendation to forego an appeal are apt examples. These decisions were sound.

**B. The Upward Departure.**

The second point to which Faubion assigns error concerns the sentencing judge's upward departure. She urges that the adjustment was improper in this case and, further, that the judge failed to articulate properly his reasons for departing from the guidelines. Faubion, however, has the law and the facts wrong.

■ As to the law, the petitioner apparently has overlooked the rule in this Circuit that an attack on the district court's upward departure is not cognizable in a § 2255 action. Under 28 U.S.C. § 2255, a petitioner may move the court to vacate, set aside, or correct the sentence on the basis that

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack....[33]

Her claim poses no constitutional, statutory, or jurisdictional claim, nor does she assert that it was in excess of the guideline maxi-

---

**29.** Faubion's counsel argued that Faubion would receive a sufficiently severe sentence without the departure. He then wisely compared the circumstances of this case to criminals who had committed several crimes of greater magnitude and, yet, not received the upward departure.

**30.** She elected instead to thank the court for giving her the "benefit of the doubt" and for not making her a career offender. She added, "And if your feel like there needs to be an upward departure, then I respect your decision."

**31.** We will not reach Faubion's contentions that her attorney's assistance was deficient and prejudicial on the basis of his failure to appeal the obstruction enhancement, his failure to warn her of the possibility that she would be classified as a career offender, his failure to move for a downward departure, and his failure to file a memorandum concerning potentially mitigating factors. Faubion failed to present these claims to the district court and, therefore, waived her right to do so here. *See Colon–Padilla*, 770 F.2d at 1334 n. 6; *King v. United States*, 565 F.2d 356, 358 (5th Cir.1978) (per curiam) ("Newly presented issues which were not part of the District Court proceedings will not be considered on appeal."); *Elrod v. United States*, 503 F.2d 959, 960 (5th Cir.1974) (per curiam) ("In his briefs filed in this Court, pro se and through counsel, [appellant] ... has alleged several other grounds for § 2255 relief. Since they have not been presented to the district court, we will not adjudicate their merits on this appeal."); 3 Charles A. Wright, et al., Federal Practice and Procedure: Criminal § 601, at 514 (1982) ("Issues not raised in the trial court cannot be considered on appeal."). Moreover, in the light of our holding that counsel's performance did not prejudice Faubion, no injustice results from foreclosing her ability to pursue these additional challenges.

**32.** *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067, 80 L.Ed.2d at 697.

**33.** 28 U.S.C. § 2255.

mum. Faubion's claim that the district judge erred in making an upward departure could only be considered, then, within the category "otherwise subject to collateral attack". This phrase, however, must be read in the context of a § 2255 action. Relief under § 2255 is reserved for (1) errors of constitutional dimension and (2) other injuries that could not have been raised on direct appeal and, if left unaddressed, would result in a miscarriage of justice.[34]

A challenge to an upward departure is outside these parameters. We expressly held in *United States v. Vaughn* that a challenge to a sentencing judge's technical application of the sentencing guidelines may not be raised in a § 2255 proceeding.[35] We reasoned that such questions are capable of being raised on direct appeal and, further, do not implicate any constitutional issues.[36] The district court's conclusion on this point was correct: Faubion could have raised this issue on direct appeal. We may not entertain it here.[37]

■ As to the facts, the petitioner is similarly mistaken. In contrast to her assertion, the district court did give valid reasons for its departure. The court based its departure on Faubion's extensive criminal history and the serious nature of the offense. Specifically, the court stated:

[Y]ou have used guns in the past to commit robberies. You have had drug offenses in the past. You've committed crimes while on parole, while on probation. This was a serious offense. * * * Given the circumstances and facts of your conviction and

your criminal background, [an] upward departure is justified in your case.

Although we are not reviewing this explanation, we have previously explained that these reasons are valid.[38]

The record further reveals that the sentencing judge made the upward adjustment as compensation for Faubion's near career offender status.

I will tell you at this time, [Ms. Faubion], that since this was a very close issue as far as the court was concerned, that the court is considering as upward departure, because of the prior convictions, ... because they came so close to being a career criminal.

The sentencing judge had an adequate basis for departing upward and, accordingly, did not err on this point.

III.

The district court's judgment denying the defendant's motion under 28 U.S.C. § 2255 is AFFIRMED.

---

**34.** *United States v. Vaughn,* 955 F.2d 367, 368 (5th Cir.1992) (per curiam); *United States v. Weintraub,* 871 F.2d 1257, 1266 (5th Cir.1989); *United States v. Smith,* 844 F.2d 203, 205–06 (5th Cir.1988).

**35.** 955 F.2d at 368.

**36.** *Id.* Similarly, challenges to a sentencing court's factual findings on the basis of which the court makes sentencing adjustments may not be raised in a § 2255 proceeding if they could have been raised on direct appeal. *See United States v. Perez,* 952 F.2d 908, 909–10 (5th Cir.1992).

**37.** We recognize the frustration the petitioner may feel as a result of the apparent circularity of our decision. We have explained that Faubion

should have raised this issue on direct appeal and, yet, she complains that her counsel failed to take a direct appeal, thus foreclosing her ability to do so. The resolution, unsatisfying to the petitioner though it may be, is that she had every right to appeal in spite of her counsel's reticence to pursue that course. In fact, it is really not the conundrum it may appear; she knew she could appeal, but had an attorney who frankly perceived no basis on which to do so. In the light of the weakness of her challenges, this was not unreasonable advice.

**38.** *See United States v. Lambert,* 963 F.2d 711, 714 (5th Cir.1992), *aff'd* 984 F.2d 658 (5th Cir. 1993) (en banc); *United States v. Carpenter,* 963 F.2d 736, 744 (5th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 355, 121 L.Ed.2d 269 (1992).